ROBERT J. ROSATI, No. 112006
robert@erisalg.com
RAQUEL M. BUSANI, No. 323162
raquel@erisalg.com
6485 N. Palm Ave.,
Fresno, California 93704
Telephone: 559-478-4119
Facsimile: 559-478-5939


Attorneys for Plaintiff,
*SHARON ADLER*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARON ADLER,<br><br>                    Plaintiff,<br><br>vs.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br><br>                    Defendant. | CASE NO.:<br><br>**COMPLAINT** |

Plaintiff, Sharon Adler ("Plaintiff" or "Adler") alleges as follows:

## JURISDICTION

1.      Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (a)(3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2.      Venue is proper in the Northern District of California because Plaintiff was and is a resident of the City of Yountville, in the County of Napa, California, when Defendant

1

terminated her long-term disability benefits and denied her appeals of that decision.  Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this Court.  Intradistrict venue is proper in this Court's San Francisco Division.

## PARTIES

3.      Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the group long term disability insurance plan for employees of Arch Health Partners ("The Plan") and thereby entitled to receive benefits therefrom.  Plaintiff was a beneficiary because she was an employee of Arch Health Partners, which established The Plan.  The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29 U.S.C. section 1001 et seq.

4.      Defendant The Lincoln National Life Insurance Company, ("Lincoln"), issued Group Policy No.: 000010026485 ("The Policy") to Arch Health Partners by which long term disability benefits are provided by The Plan.

5.      Lincoln is the insurer and decision maker for The Plan, terminated Adler's benefits at issue in this action, denied Adler's appeals of that termination, and is legally liable for providing the benefits and other relief sought herein.

## CLAIM FOR RELIEF

6.      The Policy provides long-term disability ("LTD") benefits to employees of Arch Health Partners.  Such benefits potentially could continue until the claimant reaches her Normal Social Security Retirement Age, which for Adler is the age of 66 and 6 months.

7.      Lincoln and Adler dispute the applicable terms of The Policy.

A.      Lincoln contends that the terms of The Policy which apply to Adler are those that were in effect in 2011, when Adler became disabled, hereinafter "The 2010 Terms."

B.      Adler contends that an amendment to The Policy which was adopted in 2013, after the date Adler became disabled, but which was explicitly effective retroactively to 2010, before Adler became disabled, applies to her claim, hereinafter "The 2013 Terms."

i.      Adler is informed and believes that The 2013 Terms were adopted because certain relevant provisions of The 2010 Terms in The Policy, including those quoted herein in Paragraph 8, did not and do not conform to the requirements of California law and The Policy with those terms was issued illegally.  Therefore, Adler is informed and believes that Lincoln issued The Policy with The 2013 Terms, specifically those set forth in Paragraph 9, to conform The Policy to the requirements of California law.

ii.      Additionally, and independently, The Policy states that it is delivered in California and subject to the laws of that jurisdiction.  As such, the standards and definitions set forth in The 2013 Terms alleged in Paragraph 9, were and are made part of The Policy by operation of law, and supersede The 2010 Terms, which are alleged in Paragraph 8, which are inconsistent..

8.      In order to be eligible for LTD benefits under The 2010 Terms of The Policy, an employee must meet:

A.      The Policy's definitions of disabled:

'Total Disability' or "Totally Disabled" will be defined as follows:

1.      During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of his or her regular occupation.

2.      After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself constitute Total Disability."

B.      "**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES**

means those job duties which:

1.      Are normally required to perform the Insured person's regular occupation; and

2.      Cannot reasonably be modified or omitted.

It included those main duties as performed in the usual and customary way in the general workforce; not as performed for a certain firm or at a certain work site.

\* \* \* \*

C.     **REGULAR OCCUPATION** or **OWN OCCUPATION** means the occupation, trade or profession:

1.     In which the Insured Employee was employed with the Employer prior to Disability; and

2.     Which was his or her primary source of earned income prior to Disability.  It includes any work in the same occupation for pay or profit; whether such work is with the Employer, with some other firm or on a self-employed basis.  It includes the main duties of that occupation as performed in the usual and customary way in the general workforce; not as performed for a certain firm or at a certain work site."

9.     The Policy was amended effective January 1, 2013 ("The 2013 Terms"), to "reflect State of California requirements," as follows:

A.     "1. This definition of Substantial and Material Duties will replace the definition of Main Duties found in this Policy:

**SUBSTANTIAL AND MATERIAL ACTS** means the important tasks, functions and operations:

1.     during the Elimination Period and Own Occupation Period, generally required by employers from those engaged in the Insured Employee's Own Occupation;

2.     after the Own Occupation Period, which the Insured Employee could reasonably be expected to perform satisfactorily in light of his or her age, education, training. experience, station in life, physical and mental capacity; and

3.     that cannot he reasonably omitted or modified.

In determining what Substantial and Material Acts are necessary to pursue the Insured Employee's Own Occupation; the Company will first look at the specific duties required by the Employer. If the Insured Employee is unable to perform one or more of these duties with reasonable continuity, the Company will then determine whether those duties are  customarily required of other employees engaged in the Insured Employee's Own Occupation. If any specific, material duties required of the Insured Employee by the Employer differ from the material duties customarily required of other employees engaged in the Insured Employee's Own Occupation then the company will not consider those duties in determining what Substantial and Material Acts are necessary to pursue the Insured Employee's Own Occupation.

* * * *

B.    This definition of Own Occupation or Regular Occupation will replace the definition of Own Occupation or Regular Occupation found in this Policy:

**OWN OCCUPATION** or **REGULAR OCCUPATION** means any employment, business, trade or profession and the Substantial and Material Acts of the occupation the Insured Employee was regularly performing for the Employer when the Disability began. Own Occupation is not necessarily limited to the specific job the Insured Employee performed for the Employer.

* * * *

These definitions are added if this Policy provides Total Disability benefits only: . . .

* * * *

C.    **TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows.

1.    During the Elimination Period and Own Occupation Period, it means that as a result of an Injury or Sickness the Insured Employee is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his or her Own Occupation in the usual or customary way.

2.    After the Own Occupation Period, it means that as a result of an Injury or Sickness the Insured Employee is not able to engage with reasonably continuity in any occupation in which the Insured Employee could reasonably be expected to perform satisfactorily in light of the Insured Employee 's age, education, training, experience, station in life, and physical and mental capacity; and that exists within any of the following locations:

a.     a reasonable distance or travel time from the Insured Employee's residence in light of the commuting practices of his or her community;

b.    a distance or travel time equivalent to the distance or travel time the Insured Employee traveled to work before becoming Disabled; or

c.    the regional labor market, if the Insured Employee resides or did reside: prior to becoming Disabled in a metropolitan area.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability."

///

///

**5**
**COMPLAINT**

10.     Adler was formerly employed by Arch Health Partners as a Nurse Practitioner.  A "Nurse Practitioner" is a Registered Nurse who possess additional preparation and skills in physical diagnosis, psychosocial assessment, and management of health/illness needs in primary healthcare, and who has been prepared in a program that conforms to Board standards as specified in 16 CCR § 1484 and 16 CCR § 1480(a).

11.     Adler became disabled as of March 26, 2011.  Adler is disabled by the combined effects of: failed back syndrome/post-laminectomy syndrome – she has had unsuccessful back surgeries; chronic pain; degenerative disc disease; radiculopathy; severe neuropathy -- right foot and left arm fracture of the humorous – trochanteric bursitis of the right hip; plantar fasciitis – left foot; migraines; eye/vision disorders – congenital cataract; vitreous opacities; open angle with borderline findings, and other conditions.

12.     Adler applied for and was granted LTD benefits by Lincoln effective June 24, 2011.

13.     By letter dated June 6, 2013, Lincoln notified Adler her benefits would extend into the any occupation definition of disabled, i.e., beyond 24 months.

14.     By notice dated June 5, 2012, The Social Security Administration informed Adler that it found her disabled under its rules on March 25, 2011, and awarded her monthly disability benefits beginning September, 2011.

      A.     Adler has continuously received said benefits to the present date.

      B.     By virtue of Adler's receipt of said benefits, Lincoln reduced her LTD benefit by the amount of her Social Security Disability Income, except COLAs thereto, in accordance with the terms of The Policy. (pp. 21, 24.)

15.     Arch Health Partners terminated The Policy effective September 1, 2013. Pursuant to The Policy (p. 18), "Termination of this Policy or an Employer's participation during Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability."  Therefore, Adler's entitlement to LTD benefits under The Policy was not effected by the termination of The Policy.

///

16.     By letter dated May 24, 2015, Lincoln first terminated Adler's LTD benefits.

17.     By letter dated October 12, 2015, Adler, through counsel, appealed the May 24, 2015, termination of her LTD benefits.

18.     By letter dated January 14, 2016, Lincoln granted Adler's appeal of the May 24, 2015, termination of her LTD benefits, reinstating Adler's LTD benefits effective May 25, 2015.

19.     By letter dated December 22, 2020, Lincoln again terminated Adler's LTD benefits, effective December 24, 2020.  The decision was based substantially on:

> A.     A peer review by Dr. Solomon Rajhani, provided by ECN, dated November 26, 2020, and a Clarification, dated December 4, 2020;

> B.     A November 9, 2020, Transferrable Skills Analysis, by Tracie Grumet, MA, CRC, which concluded Adler could work as a nurse; and

> C.     Lincoln's conclusion that Adler could return to work as a nurse, but not as a nurse practitioner.

20.     By letter dated April 16, 2021, Adler appealed the December 22, 2020, termination of her LTD benefits.

> A.     That letter asserted, in part, that a motivating factor in the termination of Adler's benefits is the fact that The Policy was terminated in 2013, her employer had paid no premiums for years, and likely she is the last person who was receiving benefits under The Policy when her benefits were terminated.  That letter also described Adler's medical conditions; explained her functional status; noted that Lincoln failed to provide its current claim standards for use by Adler; noted that Lincoln withheld pertinent documents; summarized Adler's medical records and medications; explained that California law applied by the choice of law provisions in The Policy and that California standards of "any occupation" were incorporated into The Policy by operation of law; explained that Lincoln failed to properly consider pain, fatigue, the side effects of medications and mental clouding as disabling condition; and failed to perform a whole person evaluation.  The appeal letter also explained that Adler's condition did not improve; that Lincoln failed to address Adler's treating doctors' opinions; Lincoln failed

to reasonably assess Adler's Social Security Administration award; that Grumet's Transferrable Skills Analysis was baseless; that Adler cannot perform the occupations set forth by Lincoln; that ECN provides biased reviews; that Dr. Rajhani's reports were without merit; and that Adler is disabled under the Terms of the Policy.

      B.    Adler also submitted her sworn declaration executed April 7, 2021, in which she explained why she cannot work as a nurse or as a nurse practitioner, or in any other capacity and also explained that she was unable to renew her RN and NP licenses because she was unable to meet the renewal requirements and that her licenses expired in December 2016. She further explained that it was not just a factor of her licenses were not renewed but the fact that she no longer met the renewal requirements so she could not maintain valid licenses as an NP or RN.

21.    By letter dated June 30, 2021, Lincoln provided Adler with its post-appeal medical and vocational reviews for her comment. That letter provided:

      A.    A "peer review" by John Z. Zheng, DO, dated May 21, 2021, provided through Exam Coordinators Network (ECN);

      B.    A "Clarification" by Dr. Zheng dated June 9, 2021; and

      C.    A "Vocational Response," dated June 25, 2021, by Tracie Grumet, MA, CRC, based on Dr. Zheng's reports, which again concluded Adler could work as a nurse, but did not address the fact that Adler's RN and NP licenses lapsed in 2016.

22.    By letter dated July 16, 2021, Adler provided her comments to Lincoln's medical and vocational reports. Therein Adler through counsel, critiqued Dr. Zheng's opinions, questioned the integrity of his "peer review" and "Clarification" and further critiqued Ms. Grumet's vocational conclusions. The letter also explained that Ms. Grumet did not address the reality that Adler could <u>not</u> legally work in the jobs Grumet identified because Adler was no longer licensed as a nurse.

23.    By letter dated August 9, 2021, Lincoln denied Adler's first appeal of the December 22, 2020, termination of her LTD benefits. The letter substantially relied upon: Dr. Rojhani's peer review and Clarification; Dr. Zheng's peer review and Clarification; and Ms.

Grument's vocational reports.

24.     Under the terms of the Policy, a second level appeal was required in order to exhaust administrative remedies.  By letter dated October 14, 2021, Adler submitted her second level appeal the December 20, 2020, termination of her LTD benefits, further critiquing the rationale for the termination of her benefits.  That letter explained that the termination and appeal denial letter did not apply the proper definition of Disabled under The Policy and that The 2013 Terms applied because the amendment was retroactive <u>and</u> The 2010 Terms were illegal because the definitions therein were not legally permitted by the California Department of Insurance. The letter also explained that contrary to the first appeal denial, the medical records do reveal significant physical and functional loss, the medical findings do support neurological and musculoskeletal cognitive and physical impairment from performing any occupation; Dr. Zheng's findings were not supported by the evidence.

25.     By letter dated December 28, 2021, Lincoln provided Adler with another post-appeal medical review.  The letter transmitted a review report by James L. Williams, M.D., dated December 21, 2021, provided through ECN.

26.     By letter dated January 12, 2022, through counsel, Adler responded to the Lincoln's post-appeal medical report.  That letter explained that Dr. Williams apparently either did not read or did not understand Adler's records, mischaracterized the medical facts, and misrepresented certain issues, and was thus of no value in evaluating Ms. Adler's condition.

27.     By letter dated January 24, 2022, Lincoln denied Adler's second level appeal from the December 22, 2020, termination of her LTD benefits.  The letter summarized the first and second level appeals, Dr. Williams' review report, and repeated Ms. Grumet's vocational conclusions that Adler was capable of working as a nurse despite the fact that she was no longer licensed to do so and doing so would be illegal.

28.     Lincoln's termination of Plaintiff's long-term disability benefits was arbitrary and capricious, an abuse of discretion, not supported by the facts, and in violation of the terms of The Policy.

///

29.   Adler has performed all conditions precedent required to be performed on her part.

30.   Plaintiff has exhausted all administrative remedies required to be exhausted by the terms of the Policy and by ERISA.

31.   At all times mentioned herein Plaintiff was, and continues to be, totally disabled under the Policy's definition of totally disabled and therefore entitled to benefits under the terms of The Policy.

32.   ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee benefit plan shall–

(1)   provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and

(2)   afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

33.   Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C. §1133 and its implementing Regulations.  Specifically:

A.   29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.   The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.      Such procedures comply with the specifications of the Regulations.

ii.      The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

iii.      Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.      The plan is required to provide a full and fair review of any adverse determination which includes:

a.      That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

b.      A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination;

(2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

1       g.     The Regulations further provide that before a plan can issue

2       an adverse benefit determination on review of a disability benefit claim,

3       the plan administrator shall provide the claimant, free of charge, with any

4       new or additional evidence considered, relied upon, or generated by the

5       plan, insurer, or other person making the benefit determination in

6       connection with the claim as soon as possible and sufficiently in advance

7       of the date on which the notice of adverse benefit determination on review

8       is required to be provided to give the claimant a reasonable opportunity to

9       respond prior to that date.

10    34.     Lincoln denied Adler a full and fair review because:

11       A.     It has claims procedures - - written guidance which it makes available to

12   its employees on an online information clearinghouse known as Inkling, which

13   constitutes internal rules, guidelines, protocols or similar criteria, but could did provide

14   that written guidance to Adler as part of the claim file for her review and comment

15   event though such written guidelines constitute statements of policy or guidance with

16   respect to The Plan concerning the denied benefit.

17       B.     Lincoln did not investigate or consider all comments, documents,

18   records or other information submitted by Adler relating to the claim.  Specifically,

19   Adler, through counsel, argued that Grumet's vocational evaluations were invalid

20   because Grumet concluded that Adler could work as a Registered Nurse even Adler is

21   no longer licensed as a Registered Nurse and therefore, it would be illegal for her to be

22   so employed.  While The Policy provides that "the loss of a professional license, an

23   occupational license, a certification, or a driver's license for any reason does not, by

24   itself total disability," and therefore Adler's loss of her RN and NP licenses does not

25   constitute total disability, the fact that Adler has lost those licenses means that

26   Grumet's vocational evaluations were invalid as a matter of law because they identify

27   only occupations which Adler, as a matter of law, cannot perform, independent of her

28   physical and mental capacities.

35.     Review is *de* novo because no version of The Policy reserves discretion to Lincoln <u>and</u> any reservation of discretion in any version of The Policy or in any other plan document is void pursuant California Insurance Code § 10110.6.

36.     If, for any reason, the court should conclude that review is for abuse of discretion, this Court should review Lincoln's decision with a high level of skepticism because:

A.      Lincoln is both the administrator and the funding source for the Policy, and therefore has a conflict of interest.

B.      Lincoln failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials.

C.      Lincoln failed to consider all the evidence and comments presented by Plaintiff in the course of her appeals.

D.      Lincoln's decision-making was influenced by its financial conflict of interest.

E.      Lincoln relied upon unsubstantiated vocational opinions and reports.

37.     There is no substantial evidence to support Lincoln's decision to terminate Adler's LTD benefits and that decision is contrary to the terms of The Policy.  The medical reviews relied upon by Lincoln from Dr. Rajhani, ¶ 19.A., Dr. Zheng, ¶ 21.A. & B., and Dr. Williams, ¶ 25, and the vocational reviews by Ms. Grumet, ¶¶ 19.B. and 21.C, are not reliable, credible or persuasive.

38.     An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to: (a) which terms of The Policy apply to her; and (b) whether Plaintiff is entitled to LTD benefits under The Policy.

39.     Plaintiff contends, and Lincoln disputes, that: (a) Plaintiff is entitled to past and continuing LTD benefits under the terms of The Policy because Plaintiff contends, and Defendant Lincoln disputes, that Plaintiff is and has been totally disabled under the terms of The Policy; and (b) Plaintiff also contends that the "2013 Terms" apply to her claim while Lincoln contends that they do not and "The 2010 Terms" apply to her claim because The 2013

Terms were not adopted until 2013, after Plaintiff became disabled.

40.     Plaintiff desires a judicial determination of her rights and a declaration as to which party's contentions are correct, together with a declaration that Defendant Lincoln is obligated to pay long-term disability benefits, retroactive to the first day her benefits were terminated, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy and concerning the applicable terms of The Policy.

41.     A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

42.     As a proximate result of Defendant Lincoln's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of the Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1.     For declaratory judgment against Lincoln, requiring it to: (a) pay long term disability benefits under the terms of the Policy to Plaintiff from the date of termination of said benefits (December 24, 2020) to the date of judgment and thereafter, until and unless it is thereafter determined that Plaintiff is no longer eligible for benefits under the terms of the Policy.

2.     For a declaratory judgment that "The 2013 Terms" of The Policy apply to Adler's claim.

3.     For attorney's fees pursuant to statute against Lincoln.

4.     For costs of suit incurred.

5.     For pre-judgment interest, pursuant to California Insurance Code § 10111.2, on all long-term disability benefit payments past due at the rate of 10% per year because the Policy is governed by California law and because The Policy provides for 10% interest on unpaid benefits.

///

1    6.     For such other and further relief as the Court deems just and proper.

2  Dated:  April 15, 2022

3                                          */s/ Robert J. Rosati*
                                          ROBERT J. ROSATI, No. 112006

4
5                                          Attorney for Plaintiff,
                                          *SHARON ADLER*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28