ROBERT J. ROSATI, No. 112006
robert@erisalg.com
RAQUEL M. BUSANI, No. 323162
raquel@erisalg.com
6485 N. Palm Ave.,
Fresno, California 93704
Telephone: 559-478-4119
Facsimile: 559-478-5939

Attorneys for Plaintiff,
SHARON ADLER

BYRNE J. DECKER, No. 337052
b.decker@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Two Monument Square, Suite 703
Portland, ME  04101
Telephone: 207-387-2963
Facsimile: 207-387-2986

Jenny H. Wang CA Bar No. 191643
jenny.wang@ogletree.com
Nikka Maleki CA Bar No. 327838
nikka@ ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA 92626
Telephone: 714-800-7900
Facsimile: 714-754-1298

Attorney for Defendant,
THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARON ADLER,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>　　　　　　Defendant. | CASE NO.: 22-cv-02356-JSC<br><br>**JOINT RULE 26(f) REPORT AND CASE MANAGEMENT STATEMENT**<br><br>DATE:　　July 28, 2022<br>TIME:　　2:30 p.m.<br>JUDGE:　Hon. Jacqueline Scott Corley<br><br>**VIA ZOOM** |

Plaintiff Sharon Adler ("Plaintiff" or "Adler") and Defendant The Lincoln National Life Insurance Company, in compliance with F.R.C.P. Rule 26(f) and Local Rule 16-9, met and conferred to develop a proposed discovery plan and hereby file their report.

1. **Jurisdiction and Service**

This case presents a federal question arising under the Employee Retirement Income Security Act of 1974 ("ERISA"). No issues exist regarding personal jurisdiction or venue. No parties remain to be served.

2. **Facts**

A. <u>Plaintiff's Statement</u>

This is an ERISA action for declaratory and equitable relief arising out of Lincoln's termination of Adler's long term disability ("LTD") benefits. Adler's sole claim for relief seeks: (1) reinstatement of benefits; (2) a declaration that the "2013 terms" apply to her claim.

Adler was formerly licensed as a Registered Nurse and Nurse Practitioner and formerly employed Arch Health Partners, in San Diego, as a Nurse Practitioner. In 2010, Lincoln issued a restated policy to Arch Health Partners, which as relevant here, defines totally disabled as "after the own occupation period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the main duties of any gainful occupation which his or her training, education or experience will reasonably allow." Adler became disabled and began receiving benefits under the policy in 2011. In 2013, Lincoln issued a revised policy to Arch Health Partners, retroactive to 2010, defining totally disabled for the any occupation period as "means that as a result of an injury or sickness the Insured Employee is not able to engage with reasonable continuity in any occupation in which the Insured Employee could reasonably be expected to perform satisfactorily in light of the Insured Employee's age, education, training, experience, station in life and physical and mental capacity and exists within any of the following locations (specifying distance or travel time from the insured employee's resident)." Arch Health Partners terminated the Policy in September, 2013. Lincoln paid LTD benefits through the own occupation period of disabled into the any occupation period of disabled into

2015, then terminated those benefits.  Adler retained present counsel, who submitted an appeal, and in January, 2016 the appeal granted, and Adler's benefits were reinstated.  Adler's RN and NP licenses lapsed in 2016.  There is nothing in the policy - - either version - - that required her to maintain those licenses and she could not do so because she was physically unable to work.  In December, 2020, Lincoln terminated Adler's benefits again.  Adler submitted two appeals, both of which were denied.  In her 2021, appeal Adler asserted that her benefits were terminated, in part, because her employer no longer paid premiums - - and sought data (not provided) from Lincoln on that issue.  Lincoln denied those appeals based on its medical review and also based on its vocational conclusion that Adler can work as a registered nurse and thereby earn the requisite level of income to disqualify her from any occupation benefits - - even though Adler has not been licensed as a Registered Nurse in years, and, of course, it would be illegal for her to work as a Registered Nurse, without such a license.  Additionally, Adler is physically incapacitated from any work.

### B.  Defendant's Statement

Adler stopped working in March 2011 due to major depressive disorder.  The group disability insurance policy Lincoln issued to Adler's former employer (the "Group Policy") contains a 24-month limitation for benefits due to a "Mental Sickness" including any "depressive" disorders.  Starting in June 2011 and for the next 24 months, Lincoln approved and paid Adler's LTD claim the maximum benefits due under the Group Policy's "Mental Sickness" provision. But Adler claimed continuing disability due to a physical condition, back pain purportedly attributable to "failed back" or post-laminectomy syndrome following lumbar surgery in March 2011.

After an initial denial and reconsideration of Adler's claimed physical disability on appeal, Lincoln approved the claim beyond the initial 24-month period. However, on November 7, 2019, Adler's primary care physician, Dr. Marie Hughes, signed an Abilities Form submitted to Lincoln stating that Adler could occasionally lift up to 20 pounds, sit, stand, walk, drive, operate foot controls and reach above the shoulder for 1-33% of the day, notwithstanding

1  Plaintiff's right foot neuropathy. Dr. Hughes stated Adler would have no restrictions in her
2  ability to use her fingers or hands.
3    By this point, Adler had not submitted records of any physical exams or testing for many
4  years and none that showed any neurologic deficits. Thus, in order to determine Adler's updated
5  functionality, Lincoln informed Adler that it wished to exercise its contractual right under the
6  Group Policy to have her examined by an independent physician. Lincoln asked Adler to attend
7  an Independent Medical Examination with an orthopedic specialist in March 2020, but she
8  (through counsel) refused, citing the COVID-10 pandemic.
9    In the absence of an IME, Lincoln had Adler's file reviewed by a board certified
10 physician, Dr. Soloman Rojhani (Physical Medicine and Rehabilitation) in October 2020. Dr.
11 Rojhani attempted to obtain Dr. Hughes' input on her patient's functionality, but Dr. Hughes
12 declined, stating she "does not feel comfortable commenting on [restrictions and limitations]
13 given she has not seen the claimant for a long time." Dr. Hughes's last visit with Adler as of
14 October 2020 was almost one year prior in November 2019. Dr. Rojhani commented on the lack
15 of recent medical work-ups but based upon the available records prior to 2020, he opined that
16 Adler had significant functionality, including unrestricted sitting ability, the ability to stand/walk
17 frequently, lift/carry occasionally up to 20 pounds, push/pull occasionally up to 40 pounds.
18   Tracie Grumet, a vocational consultant, conducted a Transferrable Skills Analysis, taking
19 into account Adler's physical abilities as outlined by Dr. Rojhani, as well as her education,
20 training, experience, etc. Grumet determined that there existed several suitable occupations for
21 Adler including Nurse, Office and Nurse, Staff, Occupation Health Nursing. Accordingly,
22 Lincoln informed Adler that she failed qualify for benefits beyond December 24, 2020.
23   Adler, through counsel, appealed, and Lincoln had the file reviewed anew by a board
24 certified physician, again selected by a third party, John Zheng, M.D. (Physical Medicine and
25 Rehabilitation). Dr. Zheng reviewed the entire record and opined on May 21, 2021 that they
26 supported Adler's ability to sit without restrictions, stand frequently for 2 hours at a time and for
27 a total of 4 hours per day, walk frequently 1 hour at a time and for a total of 3 hours per day. Dr.
28

Zheng also opined that the records failed to support the existence of migraines and "mental clouding" as claimed by Adler's counsel. Regarding Adler's claimed cognitive impairment, Dr. Zheng opined that the records failed to support the existence of any such impairments, including a statement by Adler's own physician, Dr. Belinda Cure-Smith, who informed Lincoln in writing that Adler did not have loss of cognitive functioning.

On August 9, 2021, Lincoln upheld the claim determination on appeal. Adler, through counsel, appealed a second time. Rather than submitting actual evidence of claimed ongoing impairment, counsel argued that Lincoln applied the "wrong definition" of disability to Adler's LTD claim. (Lincoln disputes that any "revised policy" issued in 2013, two years after Adler had been on claim, retroactively applied to her claim.)

On second appeal, yet another board certified physician selected by a third party, James Williams, M.D. (Physical Medicine and Rehabilitation and Electrodiagnostic Medicine) reviewed the entire record.  Dr. Williams issued a report on December 21, 2021 opining that Adler's claimed restrictions and limitations were not supported. He cited to the lack of any contemporaneous clinical documentation and physical findings supporting significant impairments. Thus, Lincoln reached the only determination compelled by the evidence; Adler failed to meet her burden of proving continued disability as defined by the Group Policy.

3. **Legal Issues**

The parties agree review is *de novo*.

**Plaintiff's Contentions:**

1. Which policy applies.  Adler's position is that the 2013 Policy and its terms apply. When Lincoln restated the Arch Health Partners policy in 2010, the California Department of Insurance had issued a clear statement (not a regulation - - a settlement agreement with the insurance industry, posted on the CDI website) unequivocally stating that it would not approve policy forms not conforming to the standards of *Erreca v. Western States* and *Moore v. American United.* The 2010 terms in the Policy issued to Arch Health Partners are clearly illegal and were

1  illegal when the 2010 policy was issued.  The 2013, terms quite obviously were intended to

2  rectify that issue.  The 2013 terms were explicitly retroactive to January 1, 2010.

3        2.    The only occupations Lincoln claims Adler can perform which meet the income

4  floor to disqualify Adler from any occupation disability benefits are as a Registered Nurse.

5  However, as stated, Adler has not been licensed as a registered nurse since 2016.  Both policies

6  state that the loss of a professional license or an occupational license or a certification does not,

7  by itself, constitute total disability.  So, the loss of her license doesn't mean that Adler is

8  disabled.  However, as a matter as of law, she cannot legally work as Registered Nurse because

9  she is not licensed to do so even if she were physically able to do so - - she is not.

10       3.    One possible argument Lincoln may make is that even though Adler is not

11 currently licensed as an RN she can renew that license.  In that context the legal question would

12 be whether the capacity to obtain additional training or education and an renewal certification is

13 something properly considered under the policy.  Adler's position is under either policy's terms,

14 it is not. That argument is more readily easier made under the terms of the 2013 policy.

15 **Lincoln's Contentions:**

16       1.    Whether Adler met her burden of proving continued disability as defined by the

17 Group Policy as of December 24, 2020.

18       2.    Lincoln contends that the Group Policy in effect at the time Adler's disability

19 arose in 2011 governed her LTD claim. The California Department of Insurance approved the

20 policy form at issue here, *i.e.*, the 2010 group disability insurance policy issued by Lincoln to

21 Arch health Partners under which Adler's LTD claim was administered.  That policy remained in

22 force and effect at all times throughout the duration of Adler's claim.  Any subsequent policy

23 amendments that applied prospectively did not change that fact.  Nor could it, since the

24 amendments cannot be retroactively applied to claims, such as that of Plaintiff, that arose before

25 the effective date of the amendment.  *See* Cal. Ins. Code § 10291.5(f); *see also Saffon v. Wells*

26 *Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 867 (9th Cir. 2008) ("Even if federal law

27 permitted states to nullify an ERISA plan's grant of discretionary authority, California law

28

1  doesn't authorize the Commissioner to do so retroactively. Cal. Ins. Code § 10291.5(f). Assuming that the Commissioner may prohibit insurance companies from using this discretionary clause in future insurance contracts, he cannot rewrite existing contracts so as to change the rights and duties thereunder."), citing Cf. *Peterson v. Am. Life & Health Ins. Co.*, 48 F.3d 404, 410 (9th Cir.1995) ("[A]n otherwise valid [insurance] policy is a binding contract and governs the obligations of the parties until the Commissioner revokes his approval."). In sum, any changes to the Group Policy, as a matter of law, only applied prospectively. That being said, Lincoln contends that the evidence fails to demonstrate that Plaintiff met either the 2010 (applicable) definition or the 2013 definition of disability.

3. Lincoln contends that Plaintiff's purported "legal disability" due to her current licensure status cannot, as a matter of law, render her disabled within the meaning of the Group Policy. *See, e.g., Pogue v. Nw. Mut. Life Ins. Co.*, 2018 WL 1189415, at *5 (W.D. Ky. Mar. 7, 2018), aff'd, 2019 WL 1376032 (6th Cir. Feb. 7, 2019) ("It is widely accepted that disability insurance policies cover factual disabilities, not legal disabilities."), collecting cases.

4. **Motions**

There are no pending motions.

The parties propose that Adler's claims be resolved through cross-motions for judgment under Fed. R. Civ. P. 52.

5. **Amendment of Pleadings**

The Parties do not anticipate amending the pleadings at this time.   The Parties request that any motion or stipulation to amend the pleadings be filed no later than **September 1, 2022.**

6. **Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirm that they have met and conferred pursuant to F.R.C.P. Rule 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7. **Disclosures**

The parties have discussed those issues required by F.R.C.P. 26 and believe the case, as an action for review on an administrative record, is exempt from exchanging initial disclosures pursuant to F.R.C.P. 26(a)(1)(B)(i).  Lincoln will produce the Administrative Record to Plaintiff no later than **August 22, 2022**.

8. **Discovery**

   1. Plaintiff's Position

First, Adler seeks confirmation that everything that should be in the Administrative Record is in the Administrative Record.  What should be in the administrative record is everything characterized as "relevant" under subsection (m)(8) of the Regulations.  That is, documents - -including guidelines, policies, and procedures - - relied upon, reviewed, or created in the course of making the adverse benefit determination or which demonstrate compliance with the Regulations.  Adler has served or will serve Interrogatories and Requests for Production of Documents on the subject of the completeness of the administrative record.

Second, Adler seeks discovery concerning which policy applies, the reasons for the 2010, amendment, the reasons for the 2013, amendment, documents concerning both, including internal documents explaining or justifying the 2013 amendment.  Adler has or will serve discovery on this issue.

Third, as stated, Adler contends that her benefits were terminated likely because she is the last person receiving benefits under the policy.  As stated, Arch Health Partners terminated the policy in September, 2013.  Admittedly, Lincoln continued to pay benefits to Adler until 2015, then terminated them, and then reinstated those benefits and paid until 2020.  But nothing changed in Adler's condition in all those years.  Therefore, it seems likely to Adler that one driving factor was that her former employer no longer pays premiums.  Adler has or will serve Interrogatories and Requests for Production of Documents seeking data about the total numbers of lives insured by the policy, when it terminated in 2013, the total number of persons receiving benefits at that time, the  reserves for all of those claims, the total monthly benefits paid for all

1 those claims; the number of persons receiving benefits and the amounts being paid for those
2 persons in December, 2020, when Adler's benefits were denied again.

3       2. <u>Defendant's Position</u>

4 Lincoln contends that this ERISA-governed action should be submitted to the Court for
5 resolution upon the Administrative Record (*i.e.*, the relevant ERISA plan documents and the
6 claim file pertaining to Plaintiff's claim for benefits under the Group Policy). No discovery
7 beyond production of these documents should be allowed. *See Opeta v. Northwest Airlines*
8 *Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007) (augmenting the Administrative Record is
9 only permitted in "exceptional circumstances."); *Ball v. Sun Life Assurance Co. of Canada*, 2016
10 WL 3211227, *1 (N.D. Cal. 2016) ("Courts in this district have held that 'the natural implication
11 of *Opeta* is that limits should be placed not only on the admissibility of evidence but also on the
12 discovery of information.'"), quoting *Knopp v. Life Ins. Co. of N. Am.*, 2009 WL 5215395 (N.D.
13 Cal. 2009); *Gonda v. Permanente Med. Grp., Inc.*, 300 F.R.D. 609, 616 (N.D. Cal. 2014). ("[I]n
14 many ERISA cases, discovery is not only irrelevant, it also undermines ERISA's goal of
15 facilitating quick and inexpensive proceedings."); *Brice v. Life Ins. Co. of N. America*, 2011 U.S.
16 Dist. Lexis 77525, *2 (N.D. Cal. 2011) (In light of the public interest in encouraging the
17 formation of employee benefit plans and the need for prompt and fair claims settlement
18 procedures, "courts cannot allow discovery in ERISA actions for the denial of benefits to be as
19 broad and overreaching as in other types of cases."); *Knopp, supra* at *3 ("Because of the interest
20 in both maintaining costs at a reasonable level and allowing for the prompt and fair resolution of
21 claims, discovery [in an ERISA case] simply cannot be as broad and overreaching as in other
22 types of cases.").

23 Lincoln will produce the Administrative Record in this action, which is comprised of the
24 claim file pertaining to Plaintiff's claim for LTD benefits under the Plan. That file contains all of
25 the information reviewed and considered by Hartford in connection with administrative review
26 of Plaintiff's claim, including all information submitted by Plaintiff during exhaustion of the
27 administrative review process. Lincoln will also produce the group life insurance policy that
28

funds the benefits under the Plan, including subsequent policy amendments. Any discovery outside of these documents is improper because the trial should be based solely upon information in the Administrative Record absent evidence that meets the strict standard for admissibility as set forth in *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (District Courts may consider extrinsic evidence "only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision."), quoting *Quisenberry v. Life Ins. Co. of N. America*, 987 F.2d 1017, 1025 (4th Cir. 1993).  In sum, this is a denial of ERISA benefits action in which the discovery and admissible evidence should be limited to the Administrative Record.

While Lincoln strongly denies that it was in any way motivated to deny Plaintiff's claim "because she is the [sic] last person receiving benefits under the policy," any such motivation is utterly irrelevant to the parties' claims or defenses.  That is because on a *de novo* review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006); *see also Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 733 (9th Cir. 2006). Either the evidence in the record will support Lincoln's claim determination (as Lincoln contends that it does), or it will not.  Either way, Lincoln's supposed motivations are irrelevant. Lincoln reserves the right to object to any discovery beyond the Administrative Record as being impermissible under ERISA.

9. **Class Actions**

This is not a class-action matter.

10. **Related Cases**

There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

11. **Relief**

**Per Plaintiff:**

1. For declaratory judgment against Lincoln ordering Lincoln to pay to Adler LTD

benefits from December 24, 2020, and continuing until and unless she is determined to no longer be entitled to such benefits under The Policy.

     2.     For attorney's fees and costs incurred in this action.

     3.     For prejudgment interest on unpaid benefits.

     4.     For declaratory judgment or other appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3) that the "2013 terms" apply to her claim prospectively.

12. **Settlement and ADR**

Plaintiff has made an early settlement demand and the parties are engaging in informal settlement negotiations. If the parties are unable to resolve the case amongst themselves, they will use a court-appointed panel mediator.

13. **Consent to Magistrate**

Lincoln declined magistrate judge jurisdiction on June 8, 2022 (Doc. No 12).

14. **Other References**

The parties do not believe this matter is appropriate for binding arbitration or any other type of reference.

15. **Narrowing of Issues**

Not applicable.

16. **Expedited Trial Procedure**

This case is not appropriate for expedited procedures.

17. **Scheduling**

The Parties propose the following dates:

- Deadline to amend pleadings: **September 1, 2022**
- Deadline for Lincoln to provide Administrative Record to Adler: **August 22, 2022**
- Deadline to complete discovery: **January 31, 2023**
- Deadline to hear non-dispositive motions: **March 1, 2023**
- The Parties agree that experts are not appropriate in this ERISA action.
- Deadline to engage in ADR: **January 31, 2023**

- Deadline to file Administrative Record with Court: **April 3, 2023**
- Final Pretrial Conference:  N/A - Because this is an ERISA action, the Parties agree that a pretrial conference is not necessary. *See Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999).  Therefore, with respect to scheduling and planning, the Parties agree to waive the pretrial conference and its attendant requirements under the Civil Local Rules.
- The Parties will file cross-motions for judgment under FRCP 52 and propose the following schedule:
    - Simultaneous Opening Briefs Under Rule 52 Due: **May 5, 2023**
    - Simultaneous Responsive Briefs Due: **June 2, 2023**
    - Simultaneous Proposed Conclusions of Law and Findings of Fact: **June 16, 2023**
- Hearing on Cross-Motions/Trial: **June 30, 2023**

18. **Trial**

The parties agree that ERISA does not permit a trial by jury.

The parties propose Adler's claims be resolved through cross-motions for judgment under Fed. R. Civ. P. 52, with simultaneous Opening and Responsive Briefs, and simultaneous Proposed Conclusions of Law and Findings of Fact, pursuant to the proposed schedule set forth in Section 17, above.

19. **Disclosure of Non-Party Interested Entities or Persons**

Both parties have filed the Certification of Interested Entities or Persons.  The following listed persons, associations of persons, firms, partnerships, corporations or other entities (1) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (2) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of the proceeding:

Plaintiff       Sharon Adler

Defendant       Lincoln National Life Insurance Company

Lincoln filed its Certification of Interested Parties on June 13, 2022 (Doc No. 14) and stated the following:

In accordance with Fed. R. Civ. P. 7.1 and Civil Local Rule 3.15, undersigned and counsel for Defendant The Lincoln National Life Insurance Company, certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities: (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

The Lincoln National Life Insurance Company is a wholly-owned subsidiary of Lincoln National Corporation. Lincoln National Corporation is publicly traded on the New York Stock Exchange, and its ticker symbol is "LNC." It has no ten-percent owners of its stock.

These representations are made to enable the Court to evaluate possible disqualification or recusal.

| **PARTIES** | **CONNECTION** |
|---|---|
| Sharon Adler | Plaintiff |
| Lincoln National Life Insurance Company | Defendant |

The parties know of no other interested parties.

20.  **Professional Conduct**

The attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.  **Other Matters**

None at this time.

DATED: July 14, 2022                     By  *s/ Robert J. Rosati*
                                         ROBERT J. ROSATI #112006

                                         Attorney for Plaintiff,
                                         SHARON ADLER

///

///

DATED: July 14, 2022             By  *s/ Jenny H. Wang*
                                                                    JENNY H. WANG CA Bar No. 191643
                                                                    NIKKA MALEKI CA Bar No. 327838

Attorneys for Defendant,
THE LINCOLN NATIONAL INSURANCE COMPANY

## **ATTESTION**

      Pursuant to Northern District of California Local Rule 5-1(h)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories hereto.

DATED: July 14, 2022             By  *s/ Robert J. Rosati*
                                                                    ROBERT J. ROSATI #112006

                                                                    Attorney for Plaintiff,
                                                                    SHARON ADLER